NIGHT BOX
FILED

MAR 23 2000

CARLOS JUENKE
CLERK, USDC / SDFL / FTL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

SOUND ADVICE, INC., a Florida corporation,

    Plaintiff,

v.

MONOGRAM CREDIT CARD BANK OF
GEORGIA, a Georgia banking corporation,

    Defendant.
_____/

Case No. 00-6050
CIV-ZLOCH

Magistrate Judge Seitzer

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

The Amended Complaint against Defendant Monogram Credit Card Bank of Georgia ("Monogram"), although it sounds in contract and tort, as well as law and equity, is built primarily upon the premise that the Contract imposed specific obligations upon Monogram, which it allegedly breached. The Contract itself says otherwise. Nevertheless, the Plaintiff evidently hopes to have the opportunity to persuade this Court to interpret the Contract to mean other than what it says based upon allegations of an inadmissible purported oral statement, or to have the Court rewrite the Contract to include obligations the Plaintiff wants to impose after the fact. The Plaintiff apparently hopes that if it throws out enough variations of the same claim (12 counts based on the same alleged wrongs) and taints the Amended Complaint with an inflammatory reference to punitive damages, the Court may view this case as something other than the simple contract claim it is. All are improper.

MH1 84411 04 1T4R04!.DOC\47660.1802

**Contract Claims (Counts I-III, VI and XI)** - Once pared down to the breach of contract claims, the Amended Complaint is deficient because the allegations supporting the Plaintiff's claims of breach of the Contract's terms are contradicted by the Contract (attached thereto and thus proper for consideration on a motion to dismiss), are barred by the Statute of Frauds, and/or are conclusory statements not supported by any factual allegations. The claim of breach of implied duty fails because the implied duty of good faith and fair dealing cannot impose obligations that contradict the express terms of the Contract.

**Misrepresentation Claims (Counts VIII and IX)** - The Plaintiff's claims for fraudulent and negligent misrepresentation are nothing more than claims of breach of contract cloaked in the language of tort, are barred by the economic loss rule, and should be dismissed.

**Equity Claims (Counts IV, V, VII, X and XII)** - The Plaintiff's counts for equitable reformation are pled without the requisite specificity, and they are nothing more than desperate attempts to have the Court impose on Monogram the same obligations the Plaintiff claims in other counts were already required by the Contract and allegedly breached. The Plaintiff's counts for unjust enrichment cannot be sustained where the Plaintiff affirms the express Contract. The count for equitable accounting should be dismissed because it is not available where there is an adequate remedy at law, and the Plaintiff failed to allege any facts that might support a conclusion that it does not have an adequate legal remedy.

### The Applicable Standard

On a motion to dismiss, the plaintiff's allegations of fact must be taken as true; if it can be shown that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief, the Amended Complaint must be dismissed. *Womanck v. Runyon*, 147 F.3d

1298 (11th Cir. 1998). The court need not accept as true conclusory allegations or allegations that are internally inconsistent or are contradicted by a document incorporated in an appended to a Amended Complaint. *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974).[1]

## PART I: THE CONTRACT CLAIMS

### Allegations of Breach of Contract in Counts III and VI Are Contradicted by the Contract and/or Are Based On Conclusory Statements

**A.     These Breach of Contract Claims are Premised Upon Alleged Duties Contradicted by the Clear and Unambiguous Contract**

The Plaintiff alleges in Count III that Monogram breached the Contract by failing to refund "discount" or "service" fees that Sound Advice had paid to Monogram in connection with the financing of purchases where the merchandise was subsequently returned. However, the Contract provisions governing payment of "discount" or "service" fees, as set forth in the footnote below, require *the Plaintiff to pay* certain amounts to Monogram; they say absolutely nothing about Monogram paying anything to the Plaintiff. They certainly do not require Monogram to refund or otherwise offset against the Plaintiff's obligations the fees paid to Monogram in connection with merchandise that was later returned, as the Plaintiff has erroneously alleged.[2] In fact, there is absolutely no language anywhere in the Contract requiring

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent decisions of the Fifth Circuit handed down prior to October 1, 1981.

[2] Section 7.02, governing "discount fees," provides, in its entirety:

> Section 7.02. Discount. Merchant shall pay Bank a discount fee during each calendar month from and after the Effective Date in which, as of the first day of such calendar month, the Prime Rate exceeds twelve percent (12%), equal in amount to

Monogram to refund to or credit the Plaintiff for these fees. Because Contract contradicts the Plaintiff's allegations as to Monogram's obligations regarding "service" and "discount" fees, these allegations must be disregarded.

---

> the product of (i) a fraction, expressed as a percentage, equal in amount to the sum of two-tenths of one percent (.2%) for each whole integral of one-fourth of one percent (1/4%) by which the Prime Rate exceeds twelve percent (12%) <u>times</u>, (ii) daily Volume during each day in such calendar month, payable monthly in arrears on the last day of each such calendar month. The amount of any discount fee payable to Bank under this Section 7.02 first shall be deducted by Bank from any promotional expense reimbursements then owing by Bank to Merchant pursuant to Section 2.03, to the extent (if any) thereof, and, secondly, be charged as deductions to the Settlement Amount as provided in Section 7.01.

Section 3.04 of the Amendment (replacing Section 3.04 of the original), governing "service fees" provides, in its entirety:

> 3.04 <u>Service Fees</u>. Bank shall charge to Merchant a service fee for purchases made under the Program charged to Accounts. The service fees Bank shall charge to Merchant with respect to purchases are set forth on the matrix attached hereto as Schedule 3.04, where the Commercial Paper Rate referenced on the vertical axis thereof shall refer to the Commercial paper Rate in effect on the first day of the calendar quarter preceding such sale and the reference on the horizontal axis thereof shall refer to the terms of such purchase. Bank shall have the right to review the service fee schedule quarterly during the Initial Term and any Renewal Term and may change such schedule in whole or in part in its sole discretion upon at least fifteen (15) days prior written notice to Merchant; provided that Bank shall not change the service fee applicable to any Purchase made pursuant to a specified sales promotion initiated during one calendar quarter provided such sales promotion terminates within thirty (30) days of the beginning of the following calendar quarter. Bank will provide Merchant in advance with any changed service fee schedule concurrently with aforesaid fifteen-(15) days prior written notice. Bank hereby agrees that any changes made to the service fee schedule shall be made in good faith and shall be commercially reasonable based on comparable Bank credit card programs in the appliance and electronic industry and the sales and portfolio performance under the Program. Bank shall review with Merchant the basis for any such increase and provide Merchant with backup documentation to support any such increase. Any service fees imposed hereunder will be deducted daily by Bank from amounts paid to Merchant under Section 7.01 hereof.

Case No. 00-6050

The Plaintiff also alleges in Count VI that Monogram failed to reimburse Plaintiff for promotional activities up to $100,000 for each of years six and seven of the Contract term (apparently without limitation to the maximum total over the entire seven years). But, the Contract provision governing reimbursement for promotion expenses does not require Monogram simply to reimburse the Plaintiff up to $100,000 per year, without limitation, as the Plaintiff has erroneously alleged. The pertinent provisions, set forth in the footnote below, expressly limit any obligation by Monogram to a maximum total of $500,000 over the seven-year term.[3] Because the Contract contradicts the Plaintiff's allegations as to Monogram's

---

[3] Specifically, Section 2.03, governing reimbursement for promotion costs, provides, in its entirety:

> Section 2.03. Promotion of Program. Merchant will promote the credit features of the Program to Cardholders, both existing and potential, in order to facilitate their maximum utilization. Merchant shall do this, among other ways, by including Credit Card Applications in all catalogues and by providing Stores with Credit Card Applications, point-of-sale credit solicitation displays and other promotional materials, and in any other manner to which Bank and Merchant may mutually agree from time to time. To assist Merchant in its promotion of the credit features of the Program in this manner, Bank agrees as follows:
>
> (a) During the Initial Term, to reimburse Merchant for actual expenses incurred by Merchant in its promotion of the credit features of the Program in such manner during such year, within fifteen (15) days after Bank is presented with an invoice therefor from Merchant and such supporting data as Bank may reasonably request to evidence usage of funds expended for the purposed described hereinabove; if, but only if, in each instance, as of each such reimbursement date, (i) the Program is then in effect, (ii) neither Bank nor Merchant has received notice of termination from the other pursuant to Section 9.02 below, and (iii) no Event of Default has occurred which is then continuing; and, provided, further, that the aggregate amount of all such promotional reimbursements made by Bank pursuant to this subsection (a) shall not exceed One Hundred Thousand Dollars ($100,000) per Program year and Five Hundred Thousand Dollars ($500,00) for the Initial Term.

"Initial Term" was expressly and clearly defined as covering the entire seven-year period.

obligations regarding reimbursement of promotional expenses, the Contract controls and these allegations must also be disregarded.

1.   The Contract Controls Over Conflicting Allegations

While it is generally the case that courts must accept all facts alleged by the plaintiff as true when considering a motion to dismiss, a plaintiff's conclusions of fact as to a defendant's contractual duties must be disregarded where they are contradicted by an attached exhibit. In such instances, the appended document controls, and dismissal is proper. *Associated Builders*, 505 F.2d at 100 (where appended document contradicts facts alleged in the Amended Complaint dismissal is appropriate).

Accordingly, the extent of the Defendant's duties must be defined by the express language of the Contract itself. Because it is clear from the face of that Contract that the Defendant is <u>not</u> required to refund fees related to returned merchandise nor pay up to $100,000 in promotional cost during years six and seven of the Contract term irrespective of the maximum total over the seven years, the conflicting assertions must be disregarded, and these claims of breach must fail.

2.   The Court Must Look to the Unambiguous Contract Language and Not Resort to Outside Evidence

The Contract is clear in its terms, and the Plaintiff does not allege otherwise. It is basic hornbook law that the Court therefore is restricted to the four corners of the Amended

---

Section 9.01. Term. This Agreement shall continue in full force and effect until five (5) years from the date hereof (the "Initial Term") and shall be renewed automatically for successive five (5) year terms ("Renewal Term(s)") thereafter . . .

[Amendment] Paragraph 6. Section 9.01 shall be amended by changing the word "five (5)" in the second line thereof to the word "**seven (7)**." (emphasis added).

Complaint, and it may not consider the alleged extrinsic evidence (i.e., the alleged oral statement regarding reimbursement of promotion expenses) – particularly where it would vary or contradict the terms of the Contract. *Gulf Theatres, Inc. v. Guardian Life Ins. Co. of America*, 26 So.2d 188 (Fla. 1946).

The Contract here is clear and unambiguous, and it does not require Monogram to reimburse the Plaintiff up to $100,000 for promotional activities each of years six and seven of the Contract term, without limitation to the maximum total over the seven-year term. The Court cannot look to extrinsic evidence, specifically the purported oral statement, to change this express term.

B.   The Count VI Claim of Breach of Contract Based on An Alleged Oral Promise Covering a Two-Year Period Is Barred by the Statute of Frauds

Because the Plaintiff's claim that Monogram was obligated to pay up to $100,000 per year during each of the last two years of the deal is based upon an alleged oral promise, and because the purported obligation could not be performed within one year, it is barred by the Statute of Frauds. Fla. Stat. § 725.01.

C.   The Claims of Breach of Contract Based on Conclusory Allegations Not Supported by Factual Allegations Must Be Dismissed

The Amended Complaint alleges in Count I that Monogram breached the Contract by raising certain "service" fees charged to the Plaintiff unreasonably and in bad faith,[4] and in Count II that Monogram breached by failing to cooperate with Sound Advice in the

---

[4] See Contract Section 3.04, quoted *infra*.

establishment, operation and promotion of the credit card program and by improperly increasing certain fees. However, the Amended Complaint fails to allege <u>any</u> facts to support these conclusory statements. "Conclusory allegations and unwarranted deductions of fact are not admitted as true." *Associated Builders,* 505 F.2d at 100. These pleadings are deficient on their face and must be dismissed.

## PART II: THE TORT CLAIMS

### Counts VIII and IX for Fraudulent and Negligent Misrepresentation Are Barred By Both the Economic Loss Rule and the Contract Terms and Are Inadequately Pled

The Plaintiff bases its counts for fraudulent and negligent misrepresentation (Counts VIII and IX, respectively) on its claim that Monogram allegedly orally misrepresented it would reimburse the Plaintiff for promotion of the credit card program up to $100,000 in each of the last two years of the Contract (apparently, without any limitation on the maximum total over the seven-year term). This also is one of the alleged breaches of contract (Count VI). However, the Plaintiff cannot sue for the exact same wrong under both theories of contract and tort. Furthermore, the Contract's merger and amendment clauses preclude a claim based on an oral representation. Additionally, the counts fail to satisfy the pleading requirements of Rule 9 (b), Fed. R. Civ. P.

A.  Plaintiff's Tort Claims Must be Dismissed Under the Economic Loss Rule

Although Count VI is for breach of contract and Counts VIII and IX are framed as misrepresentation claims, ***all are premised on the same alleged failures*** by the Defendant to perform the ***same alleged contractual duty.***

| **Count VI**<br>**Breach of Contract Allegations** | **Counts VIII and IX**<br>**Misrepresentation Allegations** |
|---|---|
| 23. (i) (General allegations) In negotiations prior to the Amendment, and in order to induce Sound Advice to enter into the Amendment, GECC, by and through its duly authorized representative, Dan Liston, specifically represented that it would continue to reimburse Sound Advice for promotional expenses during each year of the seven-year term of the Agreement, as amended, up to $100,000 per year. Notwithstanding these representations, and in violation of the express and implied terms and conditions, as well as the spirit and intent, of the Agreement and Amendment, **GECC failed and refused to reimburse Sound Advice up to $100,000.00 in each of the last two (2) years of the term of the Agreement, as amended.** (emphasis added)<br><br>50. Sound Advice incorporates by reference the factual allegations set forth in paragraphs 1 through 25, above, as if fully set forth herein.<br><br>51. GECC materially breached the Agreement and the Amendment by failing and refusing to reimburse Sound Advice up to $100,000.00 for promotional expenses in each of the last two (2) years of the term of the Agreement as amended. | 57. Sound Advice incorporates by reference the factual allegations set forth in paragraphs 1 through 25, above, as if fully set forth herein.<br><br>58. and 67. . . . GECC made misrepresentations of material fact in order to induce Sound Advice to enter into the Amendment.<br><br>59. and 68. Specifically, **GECC, through its representative Dan Liston, represented that it would continue to reimburse Sound Advice for promotional expenses during each year of the seven-year term of the Agreement, as amended, up to $100,000.00 per year.** (emphasis added) |

The counts sounding in tort should be dismissed because the alleged wrong is nothing more than a breach of the purported contract terms and because they seek to redress the same purely economic injury as the contract counts.[5]

---

[5] Although the Plaintiff claims in its tort counts it has "suffered damages separate and apart damages suffered as a result of GECC's breaches of the Agreement," this is facially absurd and

In a contractual setting, an action for tort is inappropriate where the alleged misconduct is nothing more than a breach of the contract. Although there is a limited exception to this doctrine (often referred to as the "economic loss rule") for claims of "fraud in the inducement," certain fraudulent inducement claims <u>are</u> barred. Specifically, when alleged misrepresentations are related to the defendant's performance of the contract, they do <u>not</u> give rise to an independent cause of action in tort. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238, 1240 (Fla. 1996). Thus, where a party's fraud claims are essentially premised on allegations of "unfulfilled promises," the economic loss rule bars these fraud claims, as they are nothing more than mislabeled claims of breach of contract. *Hotels of Key Largo*, 694 So.2d 74, 76 (Fla. 3d DCA 1997).

> [W]here the only alleged misrepresentation concerns the heart of the parties' agreement, simply applying the label of 'fraudulent inducement' to a cause of action will not suffice to subvert the sound policy rationales underlying the economic loss doctrine.

Here, as in *Hotels of Key Largo*, the Plaintiff's misrepresentation claims are nothing more than allegations of "unfulfilled promises." Such claims are merely mislabeled claims of breach of contract and are barred.

B.   The Contract's Amendment and Integration Clauses Expressly Preclude Reliance on the Alleged Oral Promise

The Plaintiff claims that Monogram orally promised to reimburse the Plaintiff for promotion costs up to $100,000 in each of the last two years of the Contract term (apparently

---

was added to the Amended Complaint only in response to the Defendant's Economic Loss Rule argument in its original Motion to Dismiss. The purported unfulfilled obligations in the contract and tort counts are exactly the same; the damages cannot be different. The Plaintiff does not even attempt to support the illogical conclusory statement with facts. This Court is not required to take as true such illogical and wholly unsupported conclusions.

without limitation on the maximum total over the seven-year term) but ultimately failed to fulfill that oral promise. However, the Contract provides that it may not be amended except in writing and that it contains all representations between the parties:

> Section 11.04. Amendment. This Agreement may not be amended except by written instrument signed by both Bank and Merchant.
>
> Section 11.12. Entire Agreement. This Agreement contains the entire agreement of the parties hereto with respect to the subject matter hereof, and supersedes and replaces all agreements, oral or written, heretofore made with respect to the subject matter of this Agreement.

Because Monogram's purported oral promise regarding reimbursement to the Plaintiff for promotion costs is not in writing, it would not be enforceable pursuant to Section 11.04. Furthermore, the alleged oral representation would be superseded by the express terms of the Contract pursuant to Section 11.12.

As a matter of law, the presence of the merger clause precludes the claim of misrepresentation. See *Hotels of Key Largo*, 694 So.2d at 77 ("[W]e decline to adopt the position that one can always avoid operation of the economic loss doctrine by merely pleading fraud in the inducement. . . . This would seem especially so where the parties have specifically agreed in an integration clause that their written contract 'supersedes all prior agreements or understandings.'") (citations omitted).

### PART III: The Claims For Equitable Relief

### Counts V and X for Equitable Reformation
### Based on Alleged Mistakes are Insufficiently Pled

Count V and X allege that the Contract was based on unilateral or mutual mistakes and should be equitably reformed to (i) impose obligations regarding refunding "discount" or "service" fees charged in connection with merchandise later returned to the Plaintiff's stores and (ii) reimbursement for promotional expenses up to $100,000.00 in each of the six and seven years of the Contract term. However, the Amended Complaint fails to allege the facts or circumstances of the purported mistakes or the purported corresponding fraud with the specificity required by Rule 9 (b), Fed.R.Civ.P.

Rule 9 (b) provides that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. The circumstances of fraud or mistake include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the Plaintiff." *General Electric Capital Corporation v. Lease Resolution Corporation*, 128 F.3d 1074, 1078 (7th Cir. 1997); see also *Dileo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (reasoning that Rule 9 (b) particularity "means the who, what, when, where, and how: the first paragraph of any news story").

Here Count V alleges none of these types of facts regarding the purported mistake or fraudulent conduct. Count X alleges none of these types of facts regarding purported mistake and fails to allege the time or place of the claimed fraud.

Case No. 00-6050

These counts are nothing more than a strained effort to have the Court rewrite the Contract to contain the very obligations on which the Plaintiff bases its breach of contract claims. These counts are improperly pled and should be dismissed.

### Count IV Claim for Unjust Enrichment<br>Is Not Available Where the Plaintiff Affirms an Express Contract

A claim for unjust enrichment cannot be maintained where the plaintiff affirms an express contract. "The theory of unjust enrichment applies when as a matter of fact there is no legal contract." See *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 5th DCA 1998) (upon a showing that an express contract exists . . . the unjust enrichment . . . count fails). The Plaintiff here alleges in its "General Allegations" the existence of an express contract, incorporates those allegations in every count *including* Count IV, attaches the Contract to the Amended Complaint, and sues thereunder. It thus is precluded from maintaining an unjust enrichment claim.

### Count XII Claim for Equitable Accounting<br>Is Not Available Where There Is an Adequate Remedy at Law

The Plaintiff seeks an equitable accounting of the "discount" or "service" fees that Monogram allegedly retained in connection with the financing of purchases where the merchandise was ultimately returned to the Plaintiff's stores. However, to state a claim for an equitable accounting, a plaintiff must allege facts to support a finding that it has no adequate remedy at law. *Chiron v. Isram Wholesale Tours and Travel, Ltd.*, 519 So.2d 1102 (Fla. 3d DCA 1988) (motion to dismiss affirmed where evidentiary facts alleged in Amended Complaint did not show inadequacy of legal remedy). The Plaintiff has failed to allege or plead any facts to

support a finding that it does not have an adequate remedy at law, and this count should be dismissed.

### Count XI Allegations of Breach of Implied Duty of Good Faith and Fair Dealing Are Contradicted by the Contract

The Plaintiff repeats the identical allegations in its count for breach of the implied duty of good faith and fair dealing as it asserted in the counts for breach of contract. However, "[t]he implied obligation of good faith cannot be used to vary the terms of an express contract." *City of Riviera Beach v. John's Towing*, 691 So.2d 519, 520 (Fla. 4th DCA 1997). Because the claims of breach of the Contract's express terms all fail, the counts for breach of an implied duty must likewise fail. The Plaintiff cannot rely on the implied duty of good faith and fair dealing to impose upon Monogram obligations that contradict the express terms of the Contract.

Furthermore, by pleading exactly the same factual allegations in both its count for breach of contract and its count for breach of the implied duty of good faith and fair dealing, the Plaintiff violated Rule 10(b) of the Federal Rules of Civil Procedure, which requires "[e]ach claim founded upon <u>a separate transaction or occurrence</u> . . . [to be] stated in a separate count . . ." (emphasis added). Here, there is no separate transaction or occurrence, and the claims should not have been pled as two separate counts. The Plaintiff's violation of Rule 10(c), Fed.R.Civ.P., makes it impossible to ascertain from the face of the Amended Complaint what, if anything, the Plaintiff alleges are breaches of the Contract's implied duty of good faith and fair dealing as opposed to breaches of the express terms.

### Conclusion

This case is nothing more than a simple contract dispute, where the Plaintiff seeks to enforce purported obligations that are contradicted by the express terms of the parties'

Contract. Because the Plaintiff's allegations of breach of contract are contradicted by the express terms of the Contract, they must be disregarded. And, because the implied duty of good faith and fair dealing cannot contradict the express Contract terms, that count also must be dismissed. The Plaintiff's claims for fraudulent and negligent misrepresentation are nothing more than claims of breach of contract masked in language of tort, and they too must be dismissed. The claim for unjust enrichment cannot be sustained where the Plaintiff affirms an express contract. The count for equitable accounting also fails, as the Plaintiff failed to allege any facts to support a conclusion that it has no adequate remedy at law.

**WHEREFORE** Defendant Monogram Credit Card Bank of Georgia respectfully requests that its Motion to Dismiss Amended Complaint be granted in all respects.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via first-class U.S. Mail to Alan D. Lash, Esq., Lash & Goldberg LLP, 100 S.E. 2nd Street, Suite 1200, NationsBank tower, Miami, Florida 33131-2158 this 23 day of March, 2000.

**WEIL, GOTSHAL & MANGES LLP**
Attorneys for Defendant
701 Brickell Avenue, Suite 2100
Miami, Florida 33131
Tel. (305)577-3100
Fax. (305) 374-7159

By:_____
Bruce J. Berman (Fla. Bar #159280)
Valerie B. Itkoff (Fla. Bar #26514)